1

2

3

4

5

6                          IN THE UNITED STATES DISTRICT COURT

7                              FOR THE DISTRICT OF ARIZONA

8    Daniel Borteanu,                        )    No. CV-20-01797-PHX-SPL
                                             )
9                         Plaintiff,         )    No. CV-20-01819-PHX-DLR (cons.)
                                             )    No. CV-20-02123-PHX-JJT (cons.)
10   vs.                                     )    No. CV-20-02168-PHX-DLR (cons.)
                                             )    No. CV-20-02237-PHX-DLR (cons.)
11                                           )    No. CV-20-02374-PHX-DWL (cons.)
     Nikola Corporation, et al.,             )
12                                           )
                                             )
13                        Defendants.        )
                                             )    **ORDER**
14   _____)

15         Before the Court are the following motions:

16      1. Motion of Angelo Baio to Consolidate Related Actions, Appoint Lead Plaintiff, and

17         Approve Lead Plaintiff's Selection of Counsel and the Memo in support of that

18         Motion (Docs. 16, 17);

19      2. Motion of Nayankumar Patel for Consolidation of Related Actions, Appointment as

20         Lead Plaintiff, and Approval of Lead Counsel (Doc. 19);

21      3. Motion of Dennis J. Stacy, Sr. for Consolidation of Related Actions (Doc. 20);

22      4. Memorandum of Points and Authorities in Support of Motion of the Nikola Investor

23         Group (Albert Holzmacher, Michael Wood, Tate Wood, and Joseph Roe, henceforth

24         "Nikola Investor Group I") for Consolidation (Doc. 21);

25      5. Motion of the Nikola Investor Group (Vincent Chau, Stanley Karczynski, and

26         George Mersho, henceforth "Nikola Investor Group II") for Consolidation,

27         Appointment as Lead Plaintiff, and Approval of Counsel (Doc. 24);

28      6. The Investor Group's (Theresa Grant Haun, Krishna Kusupudi, Nick Youn, and

Alejandro Ramos) Motion for and Memorandum of Authorities in Support of (1) Consolidation; (2) Appointment as Lead Plaintiff and (3) Approval of Its Selection of Lead Counsel and Liaison Counsel (Doc. 28);

7.  Motion of Mahjabin Dinyarian for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval and Selection of Counsel (Doc. 30);

8.  Motion and Memorandum of Law in Support of the Motion of Shahab Sandhu to Consolidate the Related Actions, for Appointment as Lead Plaintiff and Approval of Selection of Counsel (Doc. 31).

After considering the motions and their accompanying memos, the Reponses (Docs. 34, 39, 40, 41), and the Replies (Docs. 42, 46, 47, 48, 49), the Court now issues the following ruling in two parts. [1]

## I.    BACKGROUND

### A.  Factual background

This action concerns alleged violations of the Securities Exchange Act of 1934 ("SEA") (15 U.S.C. §§ 78a *et seq.*) by Defendants Nikola Corporation (comprised of merged companies VectoIQ and Nikola) and its officers, founder of Nikola and Executive Chairman Trevor R. Milton; former VectoIQ Chief Executive Officer and current Director Steve Girsky; former VectoIQ Chief Financial Officer Steve Shindler; Nikola CEO, President, and Director Mark A. Russell; and Nikola CFO Kim J. Brady. (Doc. 5 at 3–4; CV-20-01819, Doc. 1 at 5; CV-20-02123, Doc. 1 at 7–9; CV-20-02168, Doc. 1 at 6–7; CV-20-02237, Doc. 1 at 5; CV-20-02374, Doc. 1 at 5)

Defendant Nikola Corporation is a publicly traded Delaware corporation with its headquarters located in Arizona. (Doc. 5 at 3; CV-20-01819, Doc. 1 at 5; CV-20-02123, Doc. 1 at 7; CV-20-02168, Doc. 1 at 6; CV-20-02237, Doc. 1 at 2; CV-20-02374, Doc. 1 at 5) It designs and manufactures electric vehicles and their components. (Doc. 5 at 3; CV-

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

20-01819, Doc. 1 at 2; CV-20-02123, Doc. 1 at 6–7; CV-20-02168, Doc. 1 at 7; CV-20-02237, Doc. 1 at 2; CV-20-02374, Doc. 1 at 6) Defendant Nikola Corporation is the result of a recent merger between Nikola and VectoIQ Acquisition Corp. (Doc. 5 at 3; CV-20-01819, Doc. 1 at 2; CV-20-02123, Doc. 1 at 4; CV-20-02168, Doc. 1 at 8; CV-20-02374, Doc. 1 at 6) VectoIQ is a shell corporation formed for the purposes of acquiring other companies. (CV-20-01819, Doc. 1 at 6; CV-20-02123, Doc. 1 at 4) The companies announced the merger on March 3, 2020. (Doc. 5 at 5; CV-20-01819, Doc. 1 at 7; CV-20-02123, Doc. 1 at 13; CV-20-02168, Doc. 1 at 8) They filed the necessary documents with the Securities and Exchange Commission. (Doc. 5 at 7–14; CV-20-01819, Doc. 1 at 7–9; CV-20-02123, Doc. 1 at 17–26; CV-20-02168, Doc. 1 at 9–16; CV-20-02374, Doc. 1 at 7,11) Nikola and VectoIQ finalized their merger on June 3, 2020, forming Nikola Corporation. (Doc. 5 at 3) Throughout the process and after the merger was complete, Defendant Nikola Corporation, individual Defendants, and other Nikola employees shared press releases, other advertising materials, and promotional video and images of Nikola products. (Doc. 5 at 14–17; CV-20-01819, Doc. 1 at 7–8; CV-20-02123, Doc. 1 at 17, 24–28; CV-20-02168, Doc. 1 at 7–9, 14–15, 20–21; CV-20-02374, Doc. 1 at 2,6–7,12–16)

After the merger was completed, Defendant Nikola Corporation's securities were publicly traded on the NASDAQ. (CV-20-01819, Doc. 1 at 2; CV-20-02168, Doc. 1 at 3; CV-20-02374, Doc. 1 at 7) Plaintiffs purchased Nikola Corporation securities at allegedly artificially inflated prices based on misrepresentations made by Defendants. (Doc. 5 at 3; CV-20-01819, Doc. 1 at 5; CV-20-02123, Doc. 1 at 7; CV-20-02168, Doc. 1 at 6; CV-20-02237, Doc. 1 at 2; CV-20-02374, Doc. 1 at 5) On September 10, 2020, non-party Hindenburg Research Group published a report describing apparent falsities in the statements made by founder Defendant Trevor Milton and advertising materials published by Nikola, VectoIQ, and Defendant Nikola Corporation. (Doc. 5 at 18–31; CV-20-01819, Doc. 1 at 16–20; CV-20-02123, Doc. 1 at 15, 27; CV-20-02168, Doc. 1 at 22–25; CV-20-02374, Doc. 1 at 3) On September 15, Hindenburg Research Group published a second report, accusing Defendant Nikola Corporation of Securities Fraud. (Doc. 5 at 31; CV-20-

02168, Doc. 1 at 25–27) After these reports were publicized, the price of Defendant Nikola Corporation securities fell. (Doc. 5 at 31–36; CV-20-01819, Doc. 1 at 20; CV-20-02123, Doc. 1 at 27–28; CV-20-02168, Doc. 1 at 25–27; CV-20-02374, Doc. 1 at 4) Plaintiffs allege the fall in price caused them to lose great sums of money. (Doc. 5 at 36; CV-20-01819, Doc. 1 at 20; CV-20-02123, Doc. 1 at 28; CV-20-02168, Doc. 1 at 27; CV-20-02237, Doc. 1 at 6; CV-20-02374, Doc. 1 at 4) They seek relief under Sections 10(b) and 20(a) of the SEA, and Securities and Exchange Commission Rule 10b-5. 15 U.S.C. §§ 78j(b), 78t. (Doc. 5 at 39, 41; CV-20-01819, Doc. 1 at 24–25; CV-20-02123, Doc. 1 at 31, 33; CV-20-02168, Doc. 1 at 31–32; CV-20-02237, Doc. 1 at 15–17; CV-20-02374, Doc. 1 at 20–24) The Holzmacher Plaintiffs also assert a third claim for relief under Section 14(a) of the SEA against Defendants Nikola Corporation and Steve Girsky. 15 U.S.C. § 78n-1(a)(1). (CV-20-02123, Doc. 1 at 33) Plaintiff Douglas Malo also brings a claim for a violation of California's unfair competition law against all Defendants. (CV-20-02237, Doc. 1 at 11–15)

The movants seeking to consolidate and appoint lead counsel also invested in Nikola Corporation stock, based on the promises made in the media by Defendant Milton and other Nikola employees, and lost great sums of money. (Docs. 17 at 6, 19 at 11, 20 at 9–10, 21 at 11, 24 at 7–8, 28 at 16, 30 at 11–12, 31 at 5)

### B.  Procedural background

Four related Complaints were filed in this Court. Plaintiff Daniel Borteanu filed his Complaint on September 15, 2020. (Doc. 1) The same day, Plaintiff Borteanu issued notice as is required by the Private Securities Litigation Reform Act of 1995 ("PSLRA") by publishing a press release on *Businesswire*. (Doc. 19-2) Plaintiff John Wojichowski filed his Complaint on September 17, 2020. (CV-20-01819, Doc. 1) Plaintiff Borteanu filed an Amended Complaint on September 21, 2020. (Doc. 5) Plaintiffs Albert Holzmacher, Michael Wood, and Tate Wood filed their Complaint on November 1, 2020. (CV-20-02123, Doc. 1) Plaintiff William Eves filed his Complaint on November 10, 2020. (CV-20-02168, Doc. 1)

On September 16, 2020, Plaintiff Arab Salem filed another Complaint in the Eastern District of New York. *Salem v. Nikola Corp.*, No. 20-cv-04354 (E.D.N.Y.) That Court granted a stipulation to transfer on November 24, 2020 and the case was transferred to this District on December 8, 2020. *Salem v. Nikola Corp.*, No. 20-CV-02374-PHX-DWL (D. Ariz). On October 16, 2020, Plaintiff Douglas Malo filed another Complaint in the Eastern District of California. *Malo v. Nikola Corp.*, No. 20-cv-02168 (C.D. Cal.). That Court granted a stipulation to transfer on November 16, 2020 and the case was transferred to this District on November 20, 2020. *Malo v. Nikola Corp.*, No. 20-CV-02237-PHX-DLR (D. Ariz.). Both Salem and Malo assert the same causes of action under Sections 10(b) and 20(a) of the SEA, against the same Defendants, though not all the individual Defendants were included in both Complaints. (CV-20-02237, Doc. 1 at 5,15–17; CV-20-02374, Doc. 1 at 5,20–24)

Eight Motions to Consolidate related actions were filed with this Court.[2] (Docs. 16, 19, 20, 21, 24, 28, 30, 31) Six of those movants seek to be named lead plaintiff and to have their attorney appointed lead counsel. (Docs. 16, 19, 24, 28, 30, 31) Two of the six, The Investor Group and Shahab Sandhu, filed notices of non-opposition, meaning they accept that they are not the most qualified to serve as lead plaintiff but would serve as lead plaintiff if the Court so needed. (Docs. 34, 37) The Court now takes the eight Motions, four Responses (Docs. 34, 39, 40, 41), the Notice of Non-opposition (Doc. 37), and five Replies (Docs. 42, 46, 47, 48, 49) under review.

## II.     LEGAL STANDARDS

### A. Consolidation of a class action

Consolidation is governed by Fed. R. Civ. P. ("Rule") 42(a) and LRCiv 42.1. "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Rule 42(a). LRCiv 42.1(e)(3)

---

[2] The Court omits the withdrawn Motions filed in the cases.

allows judicial consolidation for "reasons of judicial economy and availability of judicial resources."

### B. Lead plaintiff appointment

The PSLRA provides the framework for selecting a lead plaintiff in a securities class action case. *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM, 2008 WL 942273, at *2 (D. Ariz. Apr. 7, 2008). "The party who files the action must publicize its pendency, the proposed class period, and the nature of the claims." *Id.* (citing 15 U.S.C. § 78u–4(a)(3)(A)(i)). "The publication must also inform potential class members that they have 60 days to come forward and move to be appointed lead plaintiff." *Tsirekidze*, 2008 WL 942273 at *2 (citing 15 U.S.C. § 78u–4(a)(3)(A)(ii)). If multiple class actions are brought "asserting substantially the same claims," publication is required only of the first plaintiff to file. 15 U.S.C. § 78u–4(a)(3)(A)(ii). Once the 60–day window closes, the court determines the lead plaintiff ("most adequate plaintiff")." 15 U.S.C. § 78u–4(a)(3)(B)(i). The most adequate plaintiff is the "person or group of persons that ... has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Tsirekidze*, 2008 WL 942273 at *2 (citing 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)).

### C. Lead counsel appointment

The PSLRA also provides guidelines for selecting lead counsel. It dictates that the appointed lead plaintiff designates the lead counsel. "The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). Under this rule, Court the authority to reject the lead plaintiff's choice of counsel, but not the authority to select its own. *See Cohen v. U.S. Dist. Court for N. Dist. of California*, 586 F.3d 703, 707–10 (9th Cir. 2009). In the event of a rejection by the Court, the appointed lead plaintiff would simply put forth another option. *Id.*

## III.   DISCUSSION

The Court will first address the consolidation of the six cases, then the appointment of a lead plaintiff.

### A. Consolidation of the cases

Rule 42(a) allows a court to consolidate cases on motion if they share a common question of law or fact. Furthermore, Rule 42(a) does not prevent a court from consolidating cases even where additional claims are present. *See Griffey v. Magellan Health Inc.*, No. CV-20-01282-PHX-MTL, 2020 WL 5981904, at *2 (D. Ariz. Oct. 8, 2020) (consolidation of two related cases where one of the cases contained additional claims). When considering a motion to consolidate cases, district courts have broad discretion. *Inv'rs Research Co., et al. v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989). They "balance the interest of judicial convenience against the potential for delay, confusion and prejudice that may result from such consolidation." *Dishon v. Gorham*, No. CV-16-04069-PHX-ROS, 2018 WL 4257936, at *5 (D. Ariz. Sept. 6, 2018) (internal quotation omitted). Finally, LRCiv 42.1(e)(3) allows consolidation for "reasons of judicial economy and the availability of judicial resources."

The six cases before the Court were all brought as federal securities class actions. Each Plaintiff names the same or substantially the same Defendants.[3] *See supra* I.A. The injuries to the Plaintiffs all result from buying Nikola Corporation securities and the value of those securities falling after the Hindenburg Research Group Reports were published. *See supra* I.A. Apart from the single additional claim brought by the Holzmacher Plaintiffs, and the state law claim brought by Douglas Malo, all the claims arise under the same laws, creating a common question of law (whether Defendants violated Sections 10(b) and 20(a) of the Exchange Act). *See supra* I.A. The cases are all in extremely early stages of litigation, and the potential for delay, confusion, and prejudice is very low. Consolidation promotes judicial efficiency and economy. There are no opponents to consolidation. (Docs. 34 at 3, 39 at 13, 40 at 1, 41) The judges currently assigned to the cases have conferred and have given consent to consolidation, pursuant to LRCiv 42.1(e). The Court has also given notice to the Chief Judge, pursuant to LRCiv 42.1(e). Therefore, the Court will consolidate

---

[3] Some Plaintiffs did not name each one of the individual Defendants.

all six cases under the case number No. CV-20-01797-PHX-SPL. At the time the motions to consolidate were filed, *Malo* and *Salem* were in other district courts. *See Salem v. Nikola Corp.*, No. 20-CV-02374-PHX-DWL (D. Ariz) (transferred December 8, 2020); *Malo v. Nikola Corp.*, No. 20-CV-02237-PHX-DLR (D. Ariz.) (transferred November 20, 2020). Now that they are before the District of Arizona, the Court may consolidate them with the others under Rule 42(a), because The Investor Group's Motion included these two cases as actions for consolidation. (Doc. 28 at 9)

### B.  Lead plaintiff appointment

"The PSLRA establishes a rebuttable presumption that the most adequate plaintiff is the person or entity that: (1) 'has either filed the complaint or made a motion in response to a notice,' (2) 'has the largest financial interest in the relief sought by the class,' and 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" *Lomingkit v. Apollo Educ. Grp. Inc.*, No. CV-16-00689-PHX-DLR, 2016 WL 3345514, at *2 (D. Ariz. June 16, 2016) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)). "This presumption is rebuttable only by proof that the presumptively adequate plaintiff 'will not fairly and adequately protect the interests of the class' or 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *Id.*(citing § 78u-4(a)(3)(B)(iii)(II)).

The typicality and adequacy requirements of Rule 23 are the only requirements relevant to the selection of a lead plaintiff.[4] *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Lomingkit*, 2016 WL 3345514, at *2 (internal citations omitted). "The test for adequacy is whether: (1) the proposed lead plaintiff's interests are in common with, and not antagonistic to, those

---

[4] The other Rule 23 requirements are examined after the lead plaintiffs moves for class certification. *Lomingkit v. Apollo Educ. Grp. Inc.*, No. CV-16-00689-PHX-DLR, 2016 WL 3345514, at *2 (D. Ariz. June 16, 2016).

8

of the class; and (2) proposed lead plaintiff's counsel are qualified, experienced, and generally able to conduct the litigation." *Id.* (internal quotation omitted).

"If the would-be lead plaintiff establishes that it meets the Rule 23 requirements, other potential lead plaintiffs may try to rebut the presumption." *Tsirekidze*, 2008 WL 942273 at *2 (citing 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)). "This perplexing statutory scheme suggests that the initial determination on typicality and adequacy should be a product of the court's independent judgment, and that arguments by members of the purported plaintiff class . . . should be considered only in the context of assessing whether the presumption has been rebutted." *Id.* (internal quotations omitted). Potential lead plaintiffs are ranked in terms of their financial interest in the litigation, from greatest to least. *Id.* at *3. Courts then move down the line to determine whether the potential lead plaintiffs satisfy the relevant Rule 23 requirements, until it finds one who does. *Cavanaugh*, 306 F.3d at 732. The Court here will calculate financial interest based on asserted damages because that is what has been provided to it.

The movants' financial interests are ranked as follows:

|   | Movant Name | Financial Interest |
|---|---|---|
| 1. | Nikola Investor Group II | $6,010,333.00 |
| 2. | Nayankumar Patel | $1,525,627.35 |
| 3. | The Investor Group | $1,332,589.97 |
| 4. | Angelo Baio | $703,459.93 |
| 5. | Shahab Sandu | $548,114.30 |
| 6. | Mahjabin Dinyarian | $479,413.00 |

(Docs. 24 at 7, 19-4 at 13, 28 at 10, 17 at 6, 31 at 5, 30 at 6)

### 1. *Nikola Investor Group II*

Here, the movant with the largest financial interest is Nikola Investor Group II, made up of individuals George Mersho, Vincent (Vi Kinh) Chau, and Stanley Karczynski. Nikola Investor Group II calculates its damages at $6,010,333.00. (Doc. 24 at 9) That amount is millions higher than any other would-be lead plaintiff.

In addition to having the largest financial interest, the Court finds that Nikola Investor Group II has established a presumption that it is the most adequate plaintiff for the following reasons. Nikola Investor Group II filed a timely Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Counsel in response to a notice. (Doc. 24) Nikola Investor Group II's claims arise out of the same events as the six original Plaintiffs: Nikola Investor Group II members bought Nikola stock at allegedly artificially inflated prices during the class period and lost money when the value of the stock dropped after the fraud allegations against Nikola came out. (Doc. 24 at 17,19) The other movants, who suffered the same kind of loss, describe the same events in their motions to consolidate, to varying degrees of specificity. (Docs. 17 at 6, 19 at 11, 20 at 9–10, 21 at 11, 28 at 16, 30 at 11–12, 31 at 5) Thus, Nikola Investor Group II fulfills the typicality requirement. *See Lomingkit*, 2016 WL 3345514, at *2. Nikola Investor Group II argues that it meets the adequacy requirements because it has no conflicts with other members of the class, its losses are such that it has a significant interest in the outcome of the case, and its counsel, Pomerantz LLP and Block & Leviton LLP, is highly qualified and will assist in vigorous prosecution. (Doc. 24 at 20) These arguments fulfill the adequacy test as described in *Lomingkit*. 2016 WL 3345514, at *2. Accordingly, the presumption in favor of Nikola Investor Group II as most adequate plaintiff has been established.

Two other potential lead plaintiffs, Angelo Baio and Nayankumar Patel, attempt to rebut the presumption by arguing that 1) Nikola Investor Group II is a group of unrelated individuals brought together by counsel, 2) it has failed to explain why the grouping and four law firms are necessary, 3) its filings are full of errors that suggest the individuals are not involved and counsel is running the litigation, and 4) it has not shown it is a cohesive group and its members are geographically diverse and unconnected. (Docs. 39 at 10–11, 41 at 16–20)

Courts are often hesitant to appoint groups as lead plaintiffs. "Courts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead

plaintiff." *Tsirekidze*, 2008 WL 942273 at \*3 (internal quotations omitted). An aggregate lead plaintiff can defeat the purpose of appointing a lead plaintiff altogether. *Id.* Another concern with a group as the lead plaintiff is that the litigation is actually being driven by counsel, rather than the individuals. *Id.*

Nikola Investor Group II replies that groups may be appointed as lead plaintiffs when they are fully capable of effectively representing the class interests and asserts that it is able to do so. (Doc. 42 at 20–21) It argues that the three investors are able to work cohesively together and have demonstrated their commitment to the litigation, and that two of the group members have the first and second largest individual losses of all potential lead plaintiffs, which should be dispositive. (Doc. 42 at 21–22) Nikola Investor Group II also argues that Patel does not meet the Rule 23 requirements. (Doc. 42 at 22–24)

Due to the hesitancy to appoint groups as lead plaintiff, courts often focus on evidence of cohesion in the group. *See, e.g.*, *Tsirekidze*, 2008 WL 942273 at \*3; *In re Northwestern Corp. Sec. Litig.*, 299 F.Supp.2d 997, 1006 (D.S.D. 2003) (approved group had established a plan for conducting litigation, including mechanisms to call meetings and resolve disagreements). The Court appointed a group to serve as lead plaintiff in *Tsirekidze*, but that group was a preexisting retirement fund. 2008 WL 942273 at \*5. Here, the members are all from different states and appear to have joined solely for purposes of litigation. (Doc. 24-5) They have presented a signed Joint Declaration showing that they met telephonically to discuss the benefits and detriments of proceeding as a group, and litigation strategy going forward. (Doc. 24-5) They promise to be the decisionmakers, direct the activities of their counsel, and meet telephonically to discuss strategy. (Doc. 24-5 at 5) However, as competing movant Angelo Baio points out, it is not clear how the members of Nikola Investor Group II found each other, and courts generally prefer group members to have a pre-litigation relationship. (Doc. 39 at 8–9) *See Tsirekidze*, 2008 WL 942273 at \*5; *see also Smilovits v. First Solar, Inc.*, No. CV12-0555 PHX DGC, 2012 WL 3002513, at \*1 (D. Ariz. July 23, 2012) (appointing two retirement fund groups as lead plaintiff). Despite the Joint Statement, the Court has misgivings about the cohesion of

11

Nikola Investor Group II and its ability to control the litigation without undue influence from counsel. Therefore, the Court will not appoint Nikola Investor Group II as lead plaintiff.

### 2. *Nayankumar Patel*

The Court now turns to the movant with the next greatest financial interest, Nayankumar Patel. His losses total $1,525,627.35. (Doc. 19-4 at 13) He filed a timely Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Lead Counsel in response to a notice. (Doc. 19) Patel's claims arise out of the same events as the six original Plaintiffs: He purchased Nikola securities during the class period and suffered losses when Nikola's misrepresentations came to light. (Doc. 19 at 11) Patel further asserts that his financial interest "demonstrates sufficient incentive to ensure vigorous advocacy" and that his claims are not antagonistic to any other members of the would-be class or their counsel. (Doc. 19 at 11) Finally, he asserts that his counsel, Mark Lammers of Rusing Lopez & Lizardi, P.L.L.C., has the experience and resources necessary to prosecute the action. (Doc. 19 at 11) It appears Patel has satisfied the Rule 23 requirements and thus there is a presumption that he is the "most adequate plaintiff" under 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

Competing movants Nikola Investor Group II and Angelo Baio attempt to rebut the presumption by arguing that 1) he provides insufficient information to determine whether he would be an adequate representative, 2) he made transactions at prices outside the daily trading range, 3) he is a high-frequency trader, and 4) he made Nikola Corporation securities purchases after the fraud was disclosed. (Docs. 42 at 23, 39 at 11–12)

Patel argues in reply that 1) he has provided sufficient information, 2) Nikola Investor Group II miscalculated his transactions and the prices were not outside the daily range, and 3) his high-frequency trades and purchases after the fraud was revealed do not disqualify him as a candidate for lead plaintiff. (Doc. 47 at 12–16)

First, although some courts like those cited in Baio's Response prefer to have more biographical information about a lead plaintiff candidate, *In Re Cavanaugh* makes clear

that the analysis must be tightly focused on financial interest and Rule 23 requirements. 306 F.3d at 732 ("[A] straightforward application of the statutory scheme . . .  provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case. Once that comparison is made . . .  further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements."). While Patel's initial motion was light on personal details, the Court will not hold that against him.

As to the second argument by competing movants, Patel argues that Nikola Group II's concerns with the prices come from the fact that the group based its prices on the trading range during market hours, but Patel was making trades before and after market hours, which are subject to a slightly a different price range. (Doc. 47 at 7) Patel is a high-frequency or day trader, which will be discussed shortly.

As to the third and fourth arguments, the Court notes high-frequency traders are often subject to unique defenses that can become the focus of the litigation. *See Tsirekidze*, 2008 WL 942273 at *4. A person subject to unique defenses does not satisfy the typicality requirement of Rule 23. *Lomingkit*, 2016 WL 3345514, at *2 (internal citations omitted). When a person is a high-frequency trader and there are also doubts as to their adequacy, they may be unqualified to serve as lead plaintiff, though the high-frequency trading alone may not disqualify them. *See Tsirekidze*, 2008 WL 942273 at *4; *see also Gregory A. Hurst v. Enphase Energy, Inc., et al.*, No. 20-CV-04036-BLF, 2020 WL 7025085, at *6 (N.D. Cal. Nov. 30, 2020). Patel argues that the high frequency of the trades and the fact that he bought securities after the fraud was revealed do not disqualify him. (Doc. 47 at 13–16) He cites a case that says a showing that the would-be plaintiff would have made trades anyway, regardless of fraud, is required to disqualify for high-frequency trading. *Hodges v. Immersion Corp.*, No. 09-cv-4073, 2009 WL 5125917, at *3 (N.D. Cal. Dec. 21, 2009) (Doc. 47 at 15–16) Here is where Patel's logic stumbles. Patel did seemingly purchase securities regardless of the false information Nikola published. He made several trades following the publication of the Hindenburg Reports. (Doc. 47 at 15) This behavior seems

to show he did not rely on Nikola's fraudulent statements while making his trades and may have made the trades anyway, and thus he may be subject to unique defenses as a high-frequency trader. *See Hurst*, 2020 WL 7025085 at *6 ("Investors who make share purchases after the disclosure of the fraud may be rendered atypical if the timing of trades makes their behavior unique.") (citing *In re Montage Group Limited Sec. Litig.*, 2016 WL 1598666, at *4 (N.D. Cal. 2016)). Patel also argues that the purchases made after the Hindenburg Reports do not disqualify him because they were still within the class period. (Doc. 47 at 13–14) While they are within the class period, and do not alone disqualify him, taken with the nature of his style of trading, they cast doubt on Patel's typicality. Taking these issues together, the Court finds Patel is not a suitable lead plaintiff due to the possibility that he will be subject to unique defenses not applicable to the rest of the class.

### 3. The Investor Group

The Court now turns to the movant with the next greatest financial interest: The Investor Group. The Investor Group is made up of Theresa Grant Haun, Krishna Kusupudi, Nick Youn, and Alejandro Ramos. The Investor Group filed a Notice of Non-Opposition stating that they accept they are not the plaintiff with the largest financial interest but if those with larger interests are unable to serve as lead plaintiff, they will do so. (Doc. 37 at 3) The Investor Group timely filed a Motion for and Memorandum of Authorities in Support of (1) Consolidation; (2) Appointment as Lead Plaintiff and (3) Approval of Its Selection of Lead Counsel and Liaison Counsel in response to a notice. (Doc. 28) The Investor Group has $1,332,589.97 in damages, which is not much less than Patel. (Doc. 28 at 10)

The Court notes that all four members of The Investor Group are located in different states, and admit in their signed Joint Declaration that they decided to join together as plaintiffs for litigation purposes after speaking with their counsel, Faruqi & Faruqi, LLP. (Doc. 28-2) This situation presents the same issues as Nikola Group II's aggregation. Therefore, the Court need not conduct the entire Rule 23 analysis. The Court will not appoint The Investor Group as lead plaintiff.

4.  *Angelo Baio*

The Court now moves to its analysis for Angelo Baio. Baio filed a timely Motion to Consolidate Related Actions, Appoint Lead Plaintiff, and Approve Lead Plaintiff's Selection of Counsel and the Memo in support of that Motion in response to a notice. (Docs. 16. 17) His losses total $703,459.93. (Doc. 17 at 6) Baio's claims arise out of the same events as the six original Plaintiffs: He purchased Nikola securities during the class period and suffered losses when Nikola's misrepresentations came to light. (Docs. 17 at 7–8, 18-2 at 3, 18-3 at 2) Baio further asserts that his claims are sufficiently similar to those of the other members of the class, and that he is unaware of any possible unique defenses that could be used against him. (Doc. 17 at 7–8) Finally, he asserts that his choices of lead counsel (The Rosen Law Firm, P.A.) and liaison counsel (Tiffany & Bosco, P.A.) have the experience, skills, and knowledge necessary to prosecute the action expeditiously. (Doc. 17 at 9) It appears Baio has satisfied the Rule 23 requirements and thus there is a presumption that he is the most adequate plaintiff.

The only attacks on Baio's fitness as lead plaintiff are the arguments that his financial interest is not the highest and that he is proceeding with the same counsel as the Plaintiff. (Docs. 47 at 12, 48 at 11) The lower financial interest does not disqualify him, as stated in *In re Cavanaugh*. 306 F.3d at 732. Furthermore, the fact that he sought help from The Rosen Law Firm in his case that is substantially the same as Plaintiff's is not a proper rebuttal, as it does not go to his adequacy or typicality. Therefore, the Court finds no one has rebutted the PSLRA presumption. The Court selects Baio as lead plaintiff.

**C. Lead and liaison counsel appointment**

Having appointed Angelo Baio as lead plaintiff, the Court will now ensure Baio's choice of lead counsel is appropriate. His choice of lead counsel, The Rosen Law Group, PA, is already Plaintiff's counsel in the instant case. Baio submitted a firm resume from The Rosen Law Group that shows its great deal of experience with securities class action as well as the resources it will dedicate to the case. (Doc. 18-4) The Court is satisfied that The Rosen Law Group will continue to prosecute the action vigorously and competently.

Baio also asks the Court to appoint Tiffany & Bosco, PA, as liaison counsel. He submitted a firm resume from Tiffany & Bosco that shows the firm's experience with securities class actions filed in Arizona. (Doc. 18-5) The Court is satisfied that Tiffany & Bosco will act as competent liaison counsel. The Court approves Baio's choice of counsel.

## IV.   **CONCLUSION**

The Court finds that the six cases (CV-20-01797-PHX-SPL, CV-20-01819-PHX-DLR, CV-20-02123-PHX-JJT, CV-20-02168-PHX-DLR, CV-20-02237-PHX-DLR, and CV-20-02374-PHX-DWL) are fit for consolidation under Rule 42(a). The Court also finds that Angelo Baio is fit to serve as lead plaintiff pursuant to the requirements of the PSLRA and approves Baio's choice of counsel.

Therefore,

**IT IS ORDERED**:

1.   That The Investor Group's Motion for and Memorandum of Authorities in Support of (1) Consolidation; (2) Appointment as Lead Plaintiff and (3) Approval of Its Selection of Lead Counsel and Liaison Counsel (Doc. 28) is **granted in part** as to the consolidation of the related actions and **denied in part** as to appointment as lead plaintiff and selection of lead and liaison counsel;

2.   That the Clerk of Court shall consolidate Case Nos. CV-20-01797-PHX-SPL, CV-20-01819-PHX-DLR, CV-20-02123-PHX-JJT, CV-20-02168-PHX-DLR, CV-20-02237-PHX-DLR, and CV-20-02374-PHX-DWL, with CV-20-01797-PHX-SPL being the lead case;

3.   That all future pleadings and papers submitted for filing shall bear the following complete case number: **CV-20-01797-PHX-SPL** and shall be filed only in the lead case;

4.   That Angelo Baio's Motion to Consolidate Related Actions, Appoint Lead Plaintiff, and Approve Lead Plaintiff's Selection of Counsel (Doc. 16) is **granted in part** as to the appointment of Baio as lead plaintiff and selection of lead counsel and **denied as moot** as to the consolidation of the cases; and

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     5.  That the Motions filed by Nayankumar Patel; Dennis J. Stacy, Sr.; Nikola Investor Group I; Nikola Investor Group II; Mahjabin Dinyarian; and Shahab Sandhu (Docs. 19, 20, 21, 24, 30, 31) are **denied as moot**.

     Dated this 15th day of December, 2020.

Honorable Steven P. Logan
United States District Judge